# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CYNTHIA PAYTON

VERSUS

TOWN OF MARINGOUIN, ET AL.

CIVIL ACTION

NO. 18-563-JWD-EWD

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6)* (Doc. 34) filed by Defendant, Eugene Simpson, Justice of the Peace, Ward Six, Parish of Iberville ("Justice of the Peace Simpson" or "Defendant Simpson").[1] Plaintiff Cynthia Payton ("Payton" or "Plaintiff") opposes the motion. (Doc. 42.) Defendant Simpson has filed a reply. (Doc. 45.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant Simpson's motion is granted.

**I.      Relevant Factual Background**

The relevant factual allegations are taken from the Plaintiff's *Amended and Superseding Complaint* ("*Amended Complaint*" or "*Am. Compl.*") (Doc. 16). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Beginning in August 2015, trucks and trailers began parking in close proximity to Plaintiff's house. (*Am. Compl.*, Doc. 16 at 4.) The trucks were operated on behalf of RJ's Transportation by employees of RJ's ("other defendants"). (*Id.*) Believing the trucks were hauling dangerous substances, Plaintiff sent a series of unanswered complaints to public officials in the

---

[1] Plaintiff files suit against other defendants as well, but they are not central to the instant motion filed by Justice of the Peace Simpson.

Town of Maringouin. (*Id.*) Plaintiff alleges that, after submitting these complaints, RJ's employees began stalking and harassing her. (*Id.* at 5.) Plaintiff asserts that she reported the incidents of harassment to the Iberville Sheriff's Office, but she was again ignored. (*Id.*) Plaintiff attempted to file charges against the employees who allegedly stalked and harassed her with Defendant Simpson, who is the Justice of the Peace for the Parish of Iberville. (*Id.*) Defendant Simpson expressed to Plaintiff that she could not bring any charges without Chief of Police Anderson's approval. (*Id.*)

On September 27, 2017, Plaintiff wrote a letter to RJ's concerning the conduct of RJ's employees and their operation of RJ's trucks. (*Id.* at 8.) Subsequently, on October 17, 2017, after having all her complaints to local officials and RJ's ignored, Plaintiff issued a complaint to the District Attorney ("DA"). (*Id.* at 9). In that complaint, Plaintiff noted that she attempted to file charges against RJ's employees after the alleged harassment, but she did not do so because of Defendant's instructions that she could not file charges without Chief of Police Anderson's approval. (*Id.* at 9.) The DA did not respond to Plaintiff's complaints. (*Id.*)

That same day, Justice of the Peace Simpson attended a meeting at the Maringouin Substation with RJ's employees and other named defendants. (*Id.* at 10.) At some point in time during the meeting, RJ's employees executed affidavits stating that Plaintiff criminally defamed them. (*Id.*) According to Plaintiff, the employees did so in retaliation to the letter she sent to RJ's on September 27th . (*Id*. at 10.) Plaintiff states that Justice of the Peace Simpson conferred with the other defendants at the substation and then signed warrants for Plaintiff's arrest for criminal defamation in violation of La. R.S. 14:47. (*Id.* at 11.)

Shortly after Justice of the Peace Simpson executed the arrest warrants, Officer Davis and an unidentified Iberville Parish Sheriff's deputy arrested Plaintiff. (*Id.*) Plaintiff alleges that

2

Officer Davis did not inform her that he was arresting her for allegedly defaming the other defendants but told Plaintiff that she was wanted as a fugitive from justice. (*Id.*) Subsequent to Plaintiff's arrest, Officer Davis created a false police report, placed into the public records, claiming he arrested Plaintiff after seeing her car parked at her house because he knew she was wanted as a fugitive from justice. (*Id*. at 12.) In the false report, Officer Davis states that he arrested Plaintiff as a fugitive from justice in violation of La. R.S. 14:000, a non-existent statute. (*Id.*) When Plaintiff asked Officer Davis to provide her a warrant for her arrest, he refused. (*Id.*) Plaintiff was taken to West Baton Rouge Parish Jail where she was released the following day. (*Id.* at 12-13.) Thereafter, the District Attorney refused all charges against Plaintiff alleging that she was a fugitive from justice in violation of La. R.S. 14:000. (*Id.* at 13) Additionally, thereafter, the District Attorney refused all charges against Plaintiff alleging that she was guilty of defamation in violation of La. R.S. 14:47. (*Id.*)

Plaintiff asserts the following causes of action against Justice of the Peace Simpson for his role in executing the alleged bogus warrants: malicious prosecution, abuse of process, intentional infliction of emotional distress, and being conspiratorially liable "for all torts and misconduct set forth in [the *Amended Complaint*] under Louisiana Civil Code art. 2324 and 42 U.S.C. 1983." (*Id.* at 15, 17–19.) In short, Plaintiff contends that Justice of the Peace Simpson conspired with local authorities to initiate charges against her without probable cause and to maliciously prosecute her in retaliation to her complaints made to public officials by issuing unjustified warrants for her arrest, notwithstanding the "unconstitutionality of Louisiana's criminal defamation law, notwithstanding that defendants did not allege the necessary elements of the crime of defamation, and notwithstanding that Payton allegedly committed the crime of defamation outside Iberville Parish." (*Id.* at 11.) Defendant Simpson's motion and the issue addressed herein arise from

Plaintiff's claim that Defendant Simpson is liable for all torts set forth in the *Amended Complaint*. (*Id.* at 18.)

## II. Relevant Standard

### A. Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided

that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De* C.V., No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### III. Parties' Arguments

#### A. Defendant Simpson's Original Memorandum (Doc. 34-1)

Defendant Simpson argues that dismissal is appropriate in this case because all of Plaintiff's claims against him are barred by the doctrine of judicial immunity. (Doc. 34 at 2.) Defendant Simpson states that "judicial functions" are entitled to absolute judicial immunity and that, therefore, he is entitled to judicial immunity because in issuing the arrest warrants he was acting pursuant to his capacity as magistrate under La. R.S. 13:2586(C)(1) and his authority to issue arrest warrants under Louisiana Code of Criminal Procedure article 202(A). (*Id.* at 3.) Further, Defendant Simpson contends that judges have the same judicial immunity regardless of their status in the judicial hierarchy and that, therefore, he is entitled to receive the same judicial immunity as judges of a superior jurisdiction. (*Id.*)

Defendant Simpson asserts that Plaintiff's claims should be dismissed because she failed to make any factual allegation required to meet the "high standard" which imposes liability on judges only when the judge has acted in the "clear absence of all jurisdiction". (*Id.* at 3-4.) Citing *Malina v. Gonzales*, 994 F.2d 1121 (5th Cir. 1993), Defendant Simpson argues that if a court has any subject matter jurisdiction, then sufficient jurisdiction exists for judicial immunity purposes.

Thus, Defendant Simpson claims, his court had subject matter jurisdiction since, in issuing the warrants, he was acting in his capacity as a magistrate. (*Id.* at 5.) Defendant Simpson notes that even if he did act in excess of his jurisdiction by issuing the arrest warrants, this type of action does not deprive a judge of all jurisdiction. (*Id.*)

In short, Defendant Simpson argues that Plaintiff failed to state a cognizable claim because he is entitled to judicial immunity; his actions were normal judicial functions performed by a judge and were not done in the absence of all jurisdiction. (*Id.*)

### B. Plaintiff's Memorandum in Opposition (Doc. 42)

In response to Defendant Simpson's motion, Plaintiff argues that the doctrine of absolute judicial immunity does not apply to the present set of facts. (Doc. 42.) Plaintiff does so on several grounds.

First, Plaintiff argues that Justice of the Peace Simpson is not entitled to judicial immunity because he acted in clear absence of jurisdiction by deliberately and knowingly issuing a warrant for an arrest outside his jurisdiction. (Doc. 42 at 2.) Citing Louisiana Attorney General Opinion No. 98-419 ("Justice of the Peace has no jurisdiction outside the parish in which he holds office"), Plaintiff maintains that Defendant Simpson acted in clear absence of all jurisdiction since he issued the arrest warrants for a crime that allegedly occurred outside of his jurisdiction, namely Iberville Parish. (*Id.*)

Next, Plaintiff asserts that Justice of the Peace Simpson's alleged wrongful acts are not "incidental or normal function[s] of the justice of the peace's office" and therefore cannot be entitled to immunity. (*Id.* at 3.) Louisiana Revised Statute 49:251.4 requires that justices of the peace receive special training and certification before issuing criminal arrest warrants. Plaintiff

urges that the requirements set forth in the statute indicate that issuing arrest warrants is not an incidental or normal function of the justice of the peace's office.[2] (*Id.* at 3.)

Plaintiff next points to the *McAlester* factors, which are often used by Louisiana courts to determine whether an act is a normal judicial function. These factors are:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

Plaintiff argues that the *McAlester* factors do not weigh in favor of finding that the act of issuing warrants is a normal judicial function. First, Plaintiff reiterates that the issuance of the warrants cannot be a normal judicial function because justices of the peace are required to be certified in order to issue warrants. (*Id.* at 3.) As to the second factor, Plaintiff contends that, because the acts by Justice of the Peace Simpson did not occur in a "courtroom, chambers, or other adjunct space," but instead in a meeting at the police station, the factor was not met. (*Id.* at 4.) Third, Plaintiff argues that the controversy in this case did not center around a case pending before the judge's court because (1) Plaintiff's claims do no arise from a case before Justice of the Peace Simpson's court, and (2) the warrant issued by Simpson did not arise from "contemptuous conduct in court, or from a refusal to appear, or to enforce a court order in an ongoing proceeding." (*Id.*) Lastly, Plaintiff contends that the final factor is not met, as the act of signing the warrant did not arise directly out of a visit to the judge in his official capacity but rather from a meeting at the

---

[2] Plaintiff does not allege in her *Amended and Superseding Complaint* (Doc. 16) whether Justice of the Peace Simpson did or did not receive the required certification under La. R.S. 49:251.4. Plaintiff only asserts, as highlighted in her *Memorandum in Opposition* (Doc. 42), that "the legal requirement that justices of the peace first be trained and certified before the[y] may issue arrest warrants means that issuing arrest warrants is not an incidental or normal function of the justice of the peace's office."

Police Substation in which Defendant Simpson conspired with the other defendants to arrest Plaintiff. (*Id.*) Plaintiff maintains that the *McAlester* factors have not been met, that the alleged wrongful act is thus not a normal judicial function, and that, consequently, Justice of the Peace Simpson cannot be immune from liability for committing the alleged wrongful act.

In conclusion, Plaintiff argues that because the issuance of arrest warrants is not a normal judicial function of justices of the peace and because the Defendant was acting in clear absence of all jurisdiction in issuing the arrest warrants, Justice of the Peace Simpson is not entitled to absolute judicial immunity. Therefore, Defendant Simpson's motion should be denied. (*Id.*)

### C. Defendant Simpson's Reply (Doc. 45)

In reply, Defendant Simpson asserts that the issuance of warrants is a normal judicial function under the *McAlester* factors. Specifically, Defendant Simpson argues that he is entitled to immunity because: (1) the arrest warrants he issued are acts normally performed by a judge; (2) the act (signing the arrest warrants) was in an appropriate adjunct space, as the Sheriff's Substation is a place where he regularly signs warrants and holds his court; and (3) his actions arose directly out of a visit to the judge in his official capacity. (*Id.* at 2.)

Defendant Simpson further urges that he did not act in clear absence of jurisdiction. First, Defendant Simpson asserts that he did have subject matter when issuing the arrest warrants because, in doing so, he was acting in his capacity as a magistrate pursuant to his authority under Louisiana law. Second, Defendant Simpson argues that a Justice of the Peace's authority to issue arrest warrants is not limited to the territory in which the judge is elected, and, even if his authority was limited, he issued the arrest warrants for actions taken by Plaintiff while she was within Iberville Parish. (*Id.* at 3.) In sum, Defendant Simpson maintains that, because the alleged

wrongful act was a normal judicial function, and, in exercising that function, he did not act in clear absence of all jurisdiction, he is entitled to immunity, and Plaintiff's claims are barred. (*Id.*)

IV. **Discussion**

A. **Summary of Ruling**

Having carefully considered the law and the allegations of the *Amended Complaint*, the Court finds that Plaintiff has failed to state any cognizable claim against Defendant Simpson. His alleged wrongful acts, even if true, are entitled to absolute judicial immunity.

The Court draws this conclusion for two reasons. First, Defendant Simpson's issuing of an arrest warrant is an exercise of a normal judicial function. Second, Defendant Simpson has some subject matter jurisdiction to issue the warrants, and, therefore, he did not act in clear absence of jurisdiction. For these reasons, Plaintiff has failed to state a valid claim, and Defendant's motion to dismiss will be granted.

B. **Absolute Judicial Immunity Standard**

Absolute judicial immunity extends to all ***judicial acts*** which are not performed in the ***absence of all jurisdiction***. *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099, 55 L.Ed.2d 331 (1978). When determining whether a judge is to be afforded absolute judicial immunity, Louisiana courts often turn to the two-pronged "*Mireles* test" set forth in *Mireles v. Waco*. 502 U.S. 9, 112 S. Ct. 286, 288-89, 116 L. Ed. 2d 9 (1991).

The first prong of the *Mireles* test prompts the Court to analyze whether the precise act complained of is a normal judicial function exercised by the judge. This question requires examination by the Court as to the "nature and function" of the judge's act, not the act itself. *Id.* at 288-89.

The second prong of the *Mireles* test provides that a judge will lose his or her right to immunity if the complained judicial act occurred in the complete absence of all jurisdiction. *Id.* Thus, in regard to the second prong, the Court must determine whether the Judge has some subject-matter jurisdiction to do the act in question. *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). Stated another way:

> [t]here are only two circumstances under which judicial immunity may be overcome. First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Palowsky v. Campbell*, 249 So. 3d 945, 955 (La. App. 1 Cir. 4/11/18) (citing *Mireles,* 502 U.S. at 11-12).

In sum, in order to determine whether Defendant Simpson is entitled to absolute judicial immunity, the Court must address two key issues: (1) whether the Defendant's issuance of the arrest warrants was outside of his judicial capacity (*i.e.* was this act a normal judicial function), and (2) if so, whether his actions occurred in the complete absence of all jurisdiction thereby depriving Defendant Simpson of absolute judicial immunity.

### C. Judicial Capacity

#### 1. Standard

The Fifth Circuit has adopted a four-factor test, also known as the *McAlester* factors, for determining whether a judge's actions were "judicial in nature":

> (1) whether the precise act complained of is a normal judicial function;
> (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers;
> (3) whether the controversy centered around a case pending before the court; and
> (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Malina*, 994 F.2d 1121 (citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972)). While the factors should always be considered in determining whether an act is "judicial," the factors are to be construed broadly in favor of immunity. *Malina*, 994 F.2d at 1124 (citing *Adams*, 764 F.2d at 297). Additionally, "immunity should not be denied where the denial carries the potential of raising more than a frivolous concern in a judge's mind that to take proper action might expose him to personal liability." *Id.* It is not required that all factors of the test be meet in order for the act to be considered within the judge's judicial capacity. *Adams,* 764 F.2d at 297.

In determining whether the complained act is a judicial function, the Supreme Court in *Forrester v. White* stated that courts should make the determination based on "the nature of the function performed, not the identity of the actor who performed it[.]" 484 U.S. at 229, 108 S. Ct. at 545. Stated another way, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties*, i.e*., whether they dealt with the judge in his judicial capacity." *Stump,* 98 S. Ct. at 1107. As a result, the Court is to look to the act's relation to a general function normally performed by a judge, in this case the function of issuing arrest warrants. *See Mireles,* 502 U.S. at 288.

Because the Court must examine the nature and/or function of the act, judicial immunity means that a judge "will not be deprived of immunity because the action he took was in error . . . or in excess of his authority." *Id*. at 356. Additionally, a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." *Forrester v. White*, 484 U.S. at 227, 108 S. Ct. at 544.

Difficulties often arise when courts attempt to draw the line between judicial acts, in which case immunity is appropriate, and acts that happen to be done by judges. *Forrester*, 484 U.S. at

11

227. While there exists no precise definition of the class of acts entitled to immunity, a court must draw a "distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform" in order to determine whether a judge's conduct is entitled to immunity. *Id.* at 227. For example:

> [A] judge who hires or fires a probation officer cannot meaningfully be distinguished from a district attorney who hires and fires assistant district attorneys, or indeed from any other Executive Branch official who is responsible for making such employment decisions. Such decisions, like personnel decisions made by judges, are often crucial to the efficient operation of public institutions (some of which are at least as important as the courts), yet no one suggests that they give rise to absolute immunity from liability in damages under § 1983.

*Id.* at 229.

**2. Analysis**

    **a. *McAlester* Factors: (1) Whether the precise act complained of is a normal judicial function**

Plaintiff argues that Defendant's issuance of the arrest warrants cannot be considered a normal function of the justice of the peace's office because of the legal requirement set forth in La. R.S. 49:251.4, which requires that justices of the peace to be trained and certified before they may issue arrest warrants. (Doc. 42 at 3.) The Court rejects this argument for the following reasons.

Louisiana Code of Criminal Procedure article 202 sets forth that "[a] warrant of arrest may be issued by ***any magistrate***…" (emphasis added). The article goes further to set certain limitations on justices of the peace's ability to issue warrants but, nevertheless, legally confers to justices of the peace the power to issue arrest warrants. Per Article 202, there is no person in any other capacity besides magistrates/judges that should perform the function of issuing arrest warrants; therefore, this function is inherently a normal judicial function.

The fact that procedural requirements to issue the warrants exist should not bear on whether the act is a "judicial" one. For example, the Fifth Circuit found that a state district judge was

entitled to judicial immunity even though "at the time of the altercation [giving rise to the suit] Judge Brown was not in his judge's robes…and *he may well have violated state and/or federal procedural requirements* regarding contempt citations." *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972) (emphasis added). *See also, Stump v. Sparkman*, 435 U.S. at 362–63 ("Because Judge Stump performed the type of act normally performed only by judges and because he did so in his capacity as a Circuit Court Judge, we find no merit to respondents' argument that the informality with which he proceeded rendered his action nonjudicial and deprived him of his absolute immunity).

Additionally, the Court is not to look at the specific act. Instead, the Court is only to examine whether the nature of the act, namely, a justice of the peace's issuance of arrest warrants, is a normal judicial function. Louisiana Revised Statute 49:251.4, which gives justices of the peace authority to issue arrest warrants in conjunction with La. C. Cr. P. art. 202 (which confers only to judges/magistrates the power to issue warrants), makes it clear that issuance of warrants is clearly a function carried out only by judges. Further, Justice of the Peace Simpson carried out this legally conferred function in his capacity as Justice of the Peace.

In conclusion, looking at the nature and function of the actions of the Judge/Defendant, and not the acts themselves, these actions encompass the issuance of arrest warrants.

> b. *McAlester Factors*: **(2) Whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.**

Justice of the Peace Simpson alleged wrongful conduct of issuing the arrest warrants was done at the Sheriff's Substation in the Town of Maringouin after the other defendants executed affidavits asserting that the Plaintiff "[d]id commit the crime of defamation." (Doc. 16 at 11.) First, these acts are not alleged to have been performed in inappropriate places. While the issuance

13

was not done in a courtroom or chambers, nothing in the complaint suggest that the Sheriff's substation is not an appropriate "adjunct space." Further, it appears that the action complained of arose as a result of the other defendants' visit to Defendant Simpson in his capacity as Justice of the Peace to sign the warrants. Because the factors must be construed broadly in favor of immunity, the Court, considering factors (2) and (4), concludes that the act occurred in an appropriate adjunct space arising out of a visit to the Justice of the Peace in his official capacity.

### c. *McAlester* Factors: (3) Whether the controversy centered around a case pending before the court

Finally, as to factor (3), which address whether the controversy centered around a case pending before the court, the Court finds that this factor is not met for obvious reasons. The act complained of, the issuance of the warrants, arose out of the Plaintiff's alleged tortious conduct, not a pending case before the court.

### d. *McAlester* Factors: Summation

Although the final factor is not met, it is not required that all factors of the test be met in order to afford a judge judicial immunity. *Adams,* 764 F.2d at 297. With consideration of all of the above *McAlester* factors, the Court finds that Justice of the Peace Simpson's issuance of the arrest warrants was and is a normal judicial function.

### D. Clear Absence of All Jurisdiction

**1. Standard**

The second prong of the *Mireles* test states that, although a judge's actions may be "judicial in nature," a judge will not be granted judicial immunity if his judicial act occurred in the complete absence of all jurisdiction. If a court has any subject matter jurisdiction over a matter, sufficient jurisdiction will exist for purposes of judicial immunity. *Malina*, 994 F. 2d at 1125.

The doctrine of absolute judicial immunity is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher,* 13 Wall. 335, 351, 20 L. Ed. 646 (1872). Again, to deprive a judge of his or her entitlement to absolute judicial immunity from liability, a plaintiff must prove that the judge's act meets an extremely high standard, in that the judge, in exercising the alleged wrongful act, acted in "clear absence of all jurisdiction."

The burden is difficult to overcome even in the most egregious cases, as evidenced in the Supreme Court's opinion in *Stump v. Sparkman.* 435 U.S. 346 (1978). The relevant facts are as follows: A mother filed a petition in an Indiana Circuit Court for the court's authority to have her "somewhat retarded" 15-year-old, minor daughter sterilized. *Id*. at 349. The circuit judge, Judge Stump, approved the petition in an ex parte proceeding without a hearing and without notice to the minor. *Id.* Shortly after, telling the minor that she was to have her appendix removed, the operation was performed. *Id.* Two years later, after marrying and finding she was unable to conceive, the plaintiff learned of the sterilization and filed suit against several defendants, including Judge Stump. *Id.* The Court of Appeals, overruling the District Court, found that Judge Stump was not entitled to absolute judicial immunity because he did not have jurisdiction over the petition authorizing the plaintiff's sterilization. *Id.* at 357. The Supreme Court of the United States granted certiorari and reversed. *Id.* at 354.

The Supreme Court stated that Judge Stump did not act in "clear absence of all jurisdiction" in approving the mother's petition and, therefore, was not deprived of absolute judicial immunity. *Id.* at 357. The Court of Appeals found that the Judge's actions could not be supported, relying on an Indiana Court of Appeal's intervening decision that held that a parent does not have a common-

law right to have a minor child sterilized. *Id.* The Supreme Court rejected this argument, reasoning that while the opinion presented by the Court of Appeals limits the rights of parents to sterilize their children, it does not question nor limit the jurisdiction of a circuit court judge. *Id.* Therefore, a judge would err as a matter of law if he or she were to approve a petition seeking sterilization, but the opinion does not indicate that a judge is without jurisdiction to entertain such a petition. *Id.*

As a circuit court judge, Judge Stump had "original exclusive jurisdiction in all cases at law and equity." *Id.* Because Judge Stump was conferred general jurisdiction and because no statute nor case law prohibited the Judge from considering a petition of the type presented, the plaintiff failed to show that the Judge acted in "clear absence of all jurisdiction". *Id.* at 358.

In sum, absolute judicial immunity applies to all judicial acts that are not performed in the clear absence of all jurisdiction. Thus, in every case pertaining to absolute judicial immunity, the plaintiff must be able to prove this high standard.

The question now becomes whether Justice of the Peace Simpson's conduct of issuing the arrest warrants was merely in excess of his authority, and is thus protected by judicial immunity, or whether the Defendant acted in complete and clear absence of all jurisdiction. *Id.* Thus, the Court must determine whether Justice of the Peace Simpson has some subject-matter jurisdiction to issue the arrest warrants. *Id.*

In determining whether Justice of the Peace Simpson had any subject-matter jurisdiction to issue the arrest warrants, the Court turns to Louisiana Code of Criminal Procedure Article 202, which states in pertinent part:

> A. A warrant of arrest may be issued by ***any magistrate*** pursuant to this Paragraph or as provided in Paragraph D of this Article and, except where a summons is issued under Article 209 of this Code, shall be issued when all of the following occur:

16

> (1) The person *making the complaint executes an affidavit* specifying, to his best knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any. An affidavit containing the electronic signature of the applicant shall satisfy the constitutional requirement that the testimony of the applicant be made under oath, provided that such signature is made under penalty of perjury and in compliance with R.S. 9:2603.1(D).

*See also* La. Rev. Stat. § 49:251.4. Thus, Justice of the Peace Simpson has some subject-matter jurisdiction since the authority to issue arrest warrants is conferred upon all magistrates.

Plaintiff relies on Louisiana Attorney General Opinion No. 98-419, which provides that a Justice of the Peace has no jurisdiction outside the parish in which he holds office. Plaintiff contends that, as a result, because Defendant Simpson issued arrest warrants for crimes allegedly committed outside Iberville parish, he acted in clear absence of jurisdiction.

The Court rejects Plaintiff's argument. It is a longstanding principal that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356 (U.S. 1978). Therefore, while the issuance of the warrants may have been in excess of Justice of the Peace Simpson's authority (since he issued the warrants for alleged acts committed outside of his jurisdiction), the conduct is not of the kind that will deprive him of judicial immunity.

In conclusion, because Defendant Simpson's execution of the arrest warrants was within his judicial capacity as Justice of the Peace and because he did not exercise this function in the clear absence of all jurisdiction, he is entitled to absolute judicial immunity. Defendant Simpson's motion will be granted, and Plaintiff's claims will be dismissed.

## V. Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013). Finally, one leading treatise explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that

the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, though Plaintiff makes no specific request to amend if there are deficiencies, the Court will act in accordance with the "wise judicial practice" and general rule and allow leave to amend.

## VI. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6)* (Doc. 13) filed by Defendant, Eugene Simpson, Justice of the Peace, Ward Six, Parish of Iberville, is **GRANTED**. All of Cynthia Payton's claims against Defendant Simpson are **DISMISSED**. Plaintiff is given twenty-eight (28) days in which to amend his complaint to cure the deficiencies therein. If Plaintiff fails to do so, the insufficient claims will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on April 29, 2019.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**