# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| CYNTHIA PAYTON | |
| --- | --- |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 18-563-JWD-EWD |
| TOWN OF MARINGOUIN, ET AL. | |

## RULING AND ORDER

This matter comes before the Court on the *Motion to Set Aside Entry of Default* (Doc. 52) filed by Defendant RJ's Transportation ("RJ's" or "Defendant"). Plaintiff Cynthia Payton ("Plaintiff") opposes the motion. (Doc. 54.) RJ's has filed a reply. (Doc. 57.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the Defendant's motion is granted.

**I.     Relevant Factual and Procedural Background**

Plaintiff Cynthia Payton is a resident of Maringouin, Louisiana. Plaintiff alleges that beginning in 2015, trucks and trailers began parking in close proximity to her house. (*Am. Compl.*, Doc. 16 at 4.) The trucks were operated on behalf of Defendant RJ's Transportation by Defendants James, Bourgeois, and Ventress ("the employees"). (*Id.*) Believing the trucks were hauling dangerous substances, Plaintiff sent a series of unanswered complaints to public officials in the town of Maringouin. (*Id.*) Plaintiff alleges that, after submitting these complaints, RJ's employees began stalking and harassing her. (*Id.* at 5.) Plaintiff asserts that she reported the incidents of harassment to the Iberville Sheriff's Office, but she was again ignored. (*Id.*) On September 27, 2017, Plaintiff purportedly wrote a letter to RJ's concerning the conduct of RJ's employees and their operations of RJ's trucks. (*Id.* at 8.) Plaintiff alleges that, in retaliation to the

letter sent to their employer, the three employees executed affidavits for the local authorities attesting that Plaintiff had criminally defamed them. (*Id*. at 10). Each affidavit supposedly contained an allegation that "Payton 'Did commit the crime of defamation by sending a letter to [said employee's] boss with false statements.'" (*Id*. at 10-11). Thereafter, the Justice of the Peace for Iberville Parish issued an arrest warrant for Plaintiff. (*Id.* at 17.)

Plaintiff asserts the following causes of action against the employees: malicious prosecution, abuse of process, intentional infliction of emotional distress, and being conspiratorially liable "for all torts and misconduct set forth in [the *Amended Complaint*] under Louisiana Civil Code art. 2324 and 42 U.S.C. 1983." (*Am. Compl.*, Doc. 16 at 15, 17-19). In short, Plaintiff contends that the drivers were involved in a conspiracy with the local authorities to have her complaints ignored and to have her arrested. Plaintiff also asserts that RJ's is vicariously liable for all conduct of or attributable to the employees. (*Id.* at 20.) Further, Plaintiff alleges that all the named defendants are liable jointly, severally, and in solido for their conduct. (*Id*. at 3.)

The instant lawsuit was filed on May 18, 2016. (Doc. 1.) Defendants James and Ventress were served on September 4, 2018. (Docs. 46 and 47.) Their responsive pleadings were due September 25, but they have not filed responsive pleadings to date. On November 19, 2018, a Clerk's Entry of Default was made against them. (Docs. 50 and 51.) However, both Clerk's Entry of Default were returned as undeliverable. (Docs. 55 and 56.) Defendant RJ's has now motioned this court to set aside the Entry of Default so that the case can proceed against all defendants. (Doc. 52.)

## II. The Relevant Standard

The Fifth Circuit disfavors default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). A default judgment is considered to be a drastic remedy that should only be available "when the adversary process has been halted because of an essentially unresponsive party." *Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Therefore, a defendant in technical default is not enough to get a default judgment. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). The entry of default judgment is generally a matter of discretion for the district judge. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

The Fifth Circuit has developed a two-part test to determine whether a default judgment should be entered. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Another section of this Court has recently discussed this two-part test as follows:

> In determining whether a default judgment should be entered, the Fifth Circuit has developed a two-part test. *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 813 (M.D. La. 2014). First, the Court must determine whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Factors relevant to this determination include: (1) whether there are material issues of fact at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id.* Second, the Court must assess the merits of Plaintiff's claims and find a viable claim for relief. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

*J&J Sports Prods., Inc. v. Boil & Roux Kitchen, LLC*, 2018 WL 1089267, at *1 (M.D. La. Feb. 27, 2018).

Apart from the general two-part test, there are additional implications as to the appropriateness of a default judgment when there are multiple defendants, especially when a plaintiff alleges joint and several liability. *See Road Sprinkler Fitters Local Union No. 669, U.A.*,

*AFL-CIO v. CCR Fire Protection, LLC*, 2018 WL 3076743, at *7 (M.D. La. June 21, 2018). This Court has previously stated, "[t]he issue may not be amenable to a categorical decision: the likelihood of inconsistent judgments where joint and several liability is alleged will vary with specific facts and issues presented in a particular case." *Id.*, at *8. Further, "there is an emphatically clear answer as to the appropriate course of action when it is at all uncertain whether a default judgment should be entered." *Id.* Therefore, the appropriateness of a default judgment should be decided on a case-by-case basis, and if there is not a clear answer, the Court should err on the side of caution and refuse to issue a default judgment. *Id.*

### III. Discussion

#### A. Parties' Arguments

Both Plaintiff and Defendant rely on the three-part test from *Lacy v. Sitel Corp.* when making their arguments. 227 F.3d 290, 292 (5th Cir. 2005). The three-part test requires a District Court to consider (i) whether the default was willful; (ii) whether setting aside the default would prejudice the adversary; and (iii) whether a meritorious defense is presented. *Id.* Similarly, both Plaintiff and Defendant cite Federal Rule of Civil Procedure 55(c) which states: "The Court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."

##### 1. Defendant's Argument

Defendant makes four arguments as to why granting a default judgment would be inappropriate at this time. First, Defendant notes that there is a possibility of different outcomes if the default is entered. (Doc. 52-1 at 4.) Citing *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986), Defendant contends that holding the defaulting parties liable would lead to "an incongruous and unequitable outcome" if non-defaulting parties are found not

liable because of the possibility of joint liability. (*Id*.) Therefore, Defendant argues that judgment should not be entered against the defaulting defendants until the matter has been adjudicated regarding all other defendants. (*Id*.)

Second, Defendant contends that there is no evidence that the defaults by the employees were willful. (Docs. 52-1 at 4; Doc. 57 at 2.) Defendant argues there has been no showing as to why the employees did not file responsive pleadings, and therefore, the unknown cannot be used to show willful default. (Doc. 52-1 at 4.) In support, Defendant notes that discovery has not commenced, and all facts and circumstances may not be known at this time. (*Id*.) Further in support, Defendant notes that the Clerk's Entry of Defaults were returned as undeliverable for both defaulting defendants. (Docs. 55 and 56.) In sum, Defendant argues that since there is no showing at this juncture that the defaults were willful, the trial should proceed on the merits to all other defendants.

Third, Defendant argues setting aside the entry of default will not prejudice Plaintiff. In support, Defendant cites *Lacy v. Sitel Corp*., 227 F.3d 290, 293 (5th Cir. 2005), which purports to say that requiring a plaintiff to prove their case is not sufficient harm to obtain a default judgment. (Doc. 52-1 at 4.) Again, Defendant claims that an entry of default judgment against the employees is premature because Plaintiff has alleged joint and vicarious liability. (Doc. 57 at 3.)

Finally, Defendant argues that the lack of discovery in the case makes an entry of default judgment premature. (Doc. 52-1 at 4.) Defendant cites *Lacy*, 227 F.3d at 293, for the proposition that presenting a meritorious defense is a factor in determining if good cause exists. Defendant claims that additional discovery may reveal meritorious defenses which would lead to a resolution of the case on the merits, which Defendant states would be preferable to a default

judgment. (*Id.*) However, in Defendant's reply, Defendant argues that, in addition to lack of discovery, the Court should not issue a default judgment because they are disfavored, and the Court has broad discretion over whether to enter a default judgment. (Doc. 57 at 4.)

### 2. Plaintiff's Response

In response, Plaintiff argues that the Court should not set aside the Entry of Default for four reasons. First, Plaintiff argues that the court should not set aside the entry of default because the employees' default was willful. Plaintiff cites *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000), for the proposition that if the Court finds a willful default, there need be no other finding. In support, Plaintiff argues that the silence by the employees is a willful default as a matter of law. (Doc. 54 at 3.) Plaintiff assumes that the continued silence by employees is an intentional failure to respond. (*Id.*) Further, Plaintiff argues that the details of the default can only be known by the employees and RJ's, and the Defendants have chosen not to disclose the details. (*Id.*) Plaintiff does not address that the Clerk's Entry of Default was returned as undeliverable. In sum, Plaintiff argues that silence, as a matter of law, constitutes willful default and should be sufficient to deny the motion.

Second, Plaintiff argues that Defendant has failed to present any defenses—meritorious or otherwise. (Doc. 54 at 4.) The Plaintiff notes that RJ's has presented no meritorious defenses on employees' behalf. (*Id.*) Further, Plaintiff argues that revealing meritorious defenses through discovery is insufficient to satisfy this requirement in *Lacy*. (*Id.*) Plaintiff states that RJ's has only given a single defense thus far—that it is not vicariously liable for the conduct of the employees. (*Id.* at 6). Therefore, a default against the employees will not prejudice RJ's defense to vicarious liability.

6

Third, Plaintiff argues that setting aside the defaults will prejudice Plaintiff. (*Id.* at 4.) Plaintiff asserts that because employees were in technical default, they would not be likely to appear at a deposition or otherwise cooperate in discovery. (*Id.*) Further, Plaintiff argues setting aside the default forces Plaintiff to discover defenses for the employees instead of requiring the employees to plead them pursuant to Federal Rule of Civil Procedure 8(c). (*Id.* at 5.) In sum, Plaintiff asserts that granting the motion will relieve employees of their obligation to respond, and therefore, force Plaintiff to discovery meritorious defenses for the defaulting parties.

Finally, Plaintiff argues an additional factor that Defendant did not address. Citing *Lacy*, 227 F.3d at 292, Plaintiff states another factor to be considered is whether the defendant acted expeditiously to correct the default. (Doc. 54 at 2.) Here, Plaintiff argues that because the employees did not act to correct their default, and have no intention of correcting their default, RJ's motion should be denied. (*Id.* at 5-6). Plaintiff stresses that it was RJ's, not the employees, who motioned to set aside the defaults. (*Id.* at 5.)

### B. Analysis

The Court finds that the Defendant should prevail because a court should not enter a default judgment when uncertainty exists. Here, uncertainty exists because the six factors from *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998), do not lead to a clear answer. Further, it is not clear if it is equitable to grant a default judgment in a multi-defendant case when joint and severability has been alleged. As a result, Defendant's motion will be granted.

#### 1. *Lindsey* Test

Again, under the *Lindsey* test, the Court must first determine whether the entry of default is appropriate under the circumstances. 161 F.3d at 893. To make this determination, the Court should consider the following six factors: (1) whether there are material issues of fact at issue;

7

(2) whether there has been substantial prejudice; (3) whether grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of the default judgment; (6) whether the court would think itself obligated to set aside the default on a motion by Defendant. *Id*. Having carefully considered these factors, the Courts finds that a default judgment is inappropriate. Some factors weigh in favor of the Plaintiff, while others weigh in favor of the Defendant.

First, regarding whether there are material issues of fact at issue, this Court has previously stated that there are. (Doc. 58 at 6-7.) In denying RJ's Motion to Dismiss, this Court stated that "[f]acts concerning the terms of the employee's employment, the hours of employment, and what the employees were told about Plaintiff's letters to RJ's are fact peculiarly within the knowledge of RJ's and the employee defendants, and therefore, do not and cannot be pled in Plaintiff's *Amended Complaint*." (*Id*. at 7.) The facts could presumably be unveiled in the discovery process, which has not yet taken place in this case. Therefore, there are material issues of fact at issue in this case.

Second, the Court should consider whether there has been substantial prejudice. *Lindsey*, 161 F.3d at 893. Another section of this Court noted that substantial prejudice occurs when "Defendants' failure to respond threaten to bring the adversary process to a halt, effectively prejudicing [Plaintiff's] interests." *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 814 (M.D. La. 2014). Here, substantial prejudice would not occur to Plaintiff. The case is being litigated by the remaining defendants. RJ's can still be found vicariously liable for employees' action. Further, "[t]here is no prejudice to the plaintiff where 'setting aside of the default has done no harm to plaintiff except to require it to prove its case." *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th

8

Cir. 1960)). Plaintiff contends that if the default is set aside then she will have to go through the discovery process. (Doc. 54 at 4-5.) However, the Fifth Circuit has previously stated "the setting aside of the default will not prevent plaintiff's making its proof and obtaining the decree to which it is entitled." *Gen. Tel. Corp.*, 277 F.2d at 921. If all the denying of a default judgment will do "is give the defendants their day in court" then the default has "done no harm to the plaintiff." *Id.*

Third, the Court should consider whether grounds for default have been clearly established. *Lindsey*, 161 F.3d at 893. Here, the grounds have been clearly established by Federal Rule of Civil Procedure 55. Plaintiff properly served both employees. (Docs. 46 and 47.) After service was made upon the employees, neither responded to the lawsuit. After receiving no response, Plaintiff motioned for a Clerks Entry of Default against the employees. (Doc. 48 and 49.) The clerk entered default. (Docs. 50 and 51.) The grounds for default have clearly been established by Federal Rule of Civil Procedure 55.

Fourth, the Court must consider whether the default was caused by excusable neglect or a good faith mistake. *Lindsey*, 161 F.3d at 893. There has been no showing that the default was caused by excusable neglect or a good faith mistake because the employees have yet to respond to the suit. However, the Clerk's Entry of Default was returned as undeliverable for both employees. (Doc. 55 and 56.)

Fifth, the Court should consider the harshness of the default judgment. As to the employees, a harsh outcome might be warranted. A different section of this Court has previously found "Defendants' failure to file a responsive pleading or otherwise defend the instant lawsuit for more than seven months mitigates the harshness of the default judgment." *Taylor v. City of Baton Rouge*, 39 F.Supp.3d 807, 814 (M.D. La. 2014). However, in this case and as will be

discussed below, the harshness of the default judgment could be felt by other defendants than just the defaulting defendants.

Sixth, the Court should consider whether it would think itself obligated to set aside the default on a motion by Defendant. This factor is meant to determine if there are any other facts that would give the Court "good cause" to set aside the default judgment. *Taylor*, 39 F.Supp.3d at 814. It does not appear from the pleadings that any additional facts exist that have not already been discussed under the other five factors.

The second prong of the *Lindsey* test requires the Court to assess the merits of Plaintiff's claims and find a viable claim for relief. *Nishimatsu Constr. Co. v. House. Nat'l Bank*, 515 F.2d 343, 345 (5th Cir. 1977). Regarding the second prong, this Court has already decided that Plaintiff has sufficiently alleged a claim against RJ's for vicarious liability. This Court ruled on this by denying RJ's 12(b)(6) Motion to Dismiss. (Doc. 58 at 5.) Therefore, Plaintiff satisfies this prong of the *Lindsey* test.

In sum, upon examination of the six factors to be considered in part one of the *Lindsey* test, the factors are split. Some favor the Plaintiff; some favor the Defendant. Factors favoring Plaintiff include: the grounds for default are clearly established; there has been no showing of good faith mistake or excusable neglect; and the harshness of the default judgment is negated by the extended period of time it took employees to respond. Factors favoring Defendant include: there are issues of material fact and Plaintiff would not suffer substantial prejudice. Accordingly, the *Lindsey* factors do not clearly favor the entry of a default judgment, so Defendant's motion has merit.

## 2. Joint and Several Liability

In addition to the *Lindsey* test, this case also implicates the appropriateness of entering a default judgment when there are multiple defendants who are alleged to be jointly and severally liable. There is no clear answer on if joint and several liability completely bars a court from entering a default judgment against a defaulting defendant. *See Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. CCR Fire Protection, LLC*, 2018 WL 3076743, at *8 (M.D. La. June 21, 2018). This Court has previously considered this issue on a case-by-case basis. *Id*.

A brief survey of the case law shows the lack of clarity on this issue. For example, the Supreme Court has reached this issue once as to joint liable but not to joint and several liability. In *Frow v. De La Vega*, the Supreme Court stated, "[t]he true mood of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default…against him, and proceed with the cause upon the answers of other defendants." 82 U.S. 552, 554 (1872). Further, "[t]he defaulting defendant has merely lost his standing in court." *Id*. "But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others." *Id*. Thus, the Supreme Court's approach appears to have been that all defendants who may be jointly liable will stand or fall together.

The Fourth Circuit has extended the reason behind *Frow* to joint and several liability. *See U.S. for Use of Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 944-45 (4th Cir. 1967). The Fourth Circuit characterized joint liability as "strikingly similar" to joint and/or several liability. *Id*. Therefore, in the Fourth Circuit, a defaulting defendant in a joint and several liability case will not be dealt with until all other defendants have reached a decision on the merits.

However, the Seventh Circuit has taken a different approach. In *In re Uranium Antitrust Litigation*, the Seventh Circuit held that *Frow* does not cover cases of joint and several liability. 617 F.2d 1248, 1257 (7th Cir. 1980). In that case, the Court found that "there is little possibility of inconsistent adjudications of liability." *Id*. However, the Seventh Circuit did note in dicta that a "finding of liability as to one defendant is consistent with a finding of no liability as to others, so long as there is no relationship between the parties requiring vicarious liability." *Id*. Still, the Seventh Circuit, like the Supreme Court in *Frow*, expressed a desire to avoid logically inconsistent or contradictory results. *Id*. at 1257-58.

In addition to cases, a leading treatise also addresses the issue of default judgments in actions involving joint and several defendants. The treatise takes the opposite approach to the Seventh Circuit and is more in line with the Fourth Circuit. The treatise states, "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants." 10A Charles Alan Wright *et al*., *Federal Practice and Procedure* § 2690 (4th ed. 2019).

The previous authorities do not provide a definite answer as to the role of joint and several liability in a multi-district case when some, but not all, defendants are in default. However, this Court has previously stated, "there is an emphatically clear answer as to the appropriate course of action when it is all uncertain whether a default judgment should be entered." *Road Sprinkler,* 2018 WL 3076743, at *8. Further, a "default judgment is a drastic and disfavored remedy to which a party is never 'entitled,' and it should be used only when 'the adversary process has been halted because of an unresponsive party.'" *Id*. (quoting *J&J Sports Prods. Inc. v. Boil & Roux Kitchen, LLC*, 2018 WL 1089267, at *1 (M.D. La. Feb. 27, 2018.))

For all these reasons, the Court finds that the *Motion to Set Aside Entry of Default* should be granted.

Nevertheless, the Court wants to emphasize that it is leaving open the possibility of granting a default judgment against these defendants at a later time.  This will depend on what happens in discovery, including the level of cooperation from RJ's employees.  For now, however, a default judgment is inappropriate.

IV.     **Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion to Set Aside Entry of Default* (Doc. 52) filed by Defendant RJ's Transportation is **GRANTED**, and the *Clerk's Entry of Default* against James and Ventress (Docs. 50 and 51) are hereby **SET ASIDE.**

Signed in Baton Rouge, Louisiana, on June 4, 2019.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**